[Crim. No. 1133. Fourth Dist. Apr. 30, 1957.]

THE PEOPLE, Respondent, v. JACK JAMES WALKER, Appellant.

596

Monroe & Chula for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, John S. McInerny, Deputy Attorney General, Robert P. Kneeland, District Attorney (Orange), and Kenneth Williams, Deputy District Attorney, for Respondent.

MUSSELL, J.—Defendant was accused in an Information of two counts of rape (Pen. Code, § 261, subd. 4); two counts of kidnaping (Pen. Code, § 207); and one count of burglary (Pen. Code, § 459). A jury trial resulted in a verdict finding the defendant guilty on all counts. His motion for a new trial and application for probation were denied and he was sentenced to state's prison. The sufficiency of the evidence to sustain the verdict is not questioned and defendant relies on claimed errors in the conduct of the trial as grounds for reversal of the judgment.

On March 26, 1955, the prosecuting witness, Donna Schurr, who was then about 18 years old, was working part-time at the snack bar of a drive-in theatre near Garden Grove in Orange County. At about 11:30 p.m., when she had finished work, and after having some difficulty in starting her car, she started to drive to her home in Garden Grove. When she was several blocks from her home, the defendant, who was hidden behind the front seat in the car, placed a knife at her throat and forced her to drive to a lonely road several miles from Garden Grove. During this drive, the defendant kept the knife at Donna's throat and told her where to drive the car. She tried unsuccessfully to attract the attention of a passing motorist. Defendant told her he had been watching her for a long time and had seen her in a beauty contest in Balboa. However, Donna did not know the defendant and had

never been on a date with him. After he had forced her to drive to the lonely road, he forced her to kiss him while he fondled her body. He then ordered her to get in the back seat of the car and there accomplished an act of sexual intercourse with her. He drove back to the theatre, where he got out of the car, warned her not to try to follow him, and ran off into the darkness. She tried unsuccessfully to start her car to follow him and then jumped out and ran after him. She stopped a passing car and asked the woman driving it to help her catch the defendant. Donna told the woman (Mrs. Parker) that she had just been raped by the man in the car ahead. They tried to follow the defendant but were unable to overtake him. Mrs. Parker took Donna to the Orange County sheriff's office, where she reported the rape. At that time both Mrs. Parker and one of the officers noticed four or five marks on Donna's throat where the skin was broken and on one mark there was blood showing. One of the officers then drove Donna back to the theatre where her car was parked and found it was necessary to push it to get it started.

On or about October 17, 1955, at about 11 p.m., one of Donna's neighbors received a telephone call from her informing him that someone was prowling around her home and underneath her windows. The neighbor and his son, upon investigating, found that the prowler was the defendant. When he was discovered, defendant ran and they were unable to catch him.

On January 10, 1956, at about 9:30 p.m., Donna returned to her home after visiting friends. Her mother had gone out for the evening and when Donna got ready for bed, the 'phone rang and a man, calling himself Mr. Brewster, asked for her mother. Donna told him her mother was not at home. Donna then retired and a few minutes thereafter she heard a noise at the rear of the house. She got up to investigate and saw that the lock on the back door had been broken. Immediately thereafter the defendant swung the door open and ran at her with a knife in his hand. She ran for the bathroom window to escape and the defendant intercepted her. She reached for and grabbed the knife and cut her hand. She screamed and the defendant put his hand over her mouth and said, "Shut up or I will kill you." Defendant then pushed her into the bedroom and told her to get her coat. He then held the knife at her throat and pushed her out of the kitchen and out of the house. As she was leaving, Donna tore the curtain on the front door and knocked a small doily off a piece

of furniture in an attempt to let her mother know when she returned that she had been forcibly taken from the house.

Defendant forced Donna to get into his automobile and they drove for about 10 or 15 minutes. Donna was dressed in a flannel nightgown and a light duster. She recognized the defendant as the man who had previously attacked her and noticed that the car he was driving was a Plymouth sedan. She pleaded with him to let her go and not attack her. He warned her not to tell the police "this time" and stopped the car in what appeared to be a tract of new houses. When Donna tried to resist defendant's advances, he hit her in the stomach, and when she tried to open the door of the car to escape, he told her if she tried it again he would kill her. He then forced her to get in the back seat of the car and had sexual intercourse with her. After the attack, defendant drove his car within a short distance of Donna's home and pushed her out. She then saw her fiancé, Lloyd Brett, leaving the house and screamed at him, telling what had happened. Brett got in his car and started in pursuit of the defendant, who was then speeding away. Donna then went into the house and reported the matter to the sheriff. The two speeding cars attracted the attention of a state highway patrol officer and he followed and overtook defendant's car, forcing it to the side of the road. Brett then arrived and ran back to the defendant's car, brandishing a revolver. The officer told Brett to drop the gun, and while the officer was waiting for assistance, Brett continuously accused the defendant of raping his girl friend. Defendant denied any knowledge of what Brett was talking about. In a few minutes other officers arrived at the scene. One of them asked the defendant if Brett's accusations were true and the defendant denied them, saying that he had spent the evening with some friends at a movie and then a bar and that he was then on his way home. He denied knowing Donna and when the officers said that they would go back to the bar where he said he had just dropped off his friends and check his story, defendant said, "O.K. I did it." The officer said, "Did what?" Defendant then told them that he had just broken into Donna's house with a knife and had raped her by means of force. One of the officers then said, "Well, the last time you raped her you used rubber gloves. Where are they?" The defendant then admitted that he had forcibly raped Donna on the earlier occasion and stated that the rubber gloves were "home some place." The officers found a crude mask in the defendant's pocket and a billy club,

binoculars and several other items in his car. The defendant told the officers that he used the binoculars to watch Donna's house and that the knife he had used was under the front seat of his car. The officers were unable to find the knife and defendant then stated that it might have fallen out of the car earlier. Officer Rios asked the defendant a few more questions and then returned with him to Donna's house. She there identified the defendant and he was taken to the sheriff's office where he immediately made a voluntary, full and complete confession and specifically admitted raping Donna by means of force and violence on the two occasions charged. The confession was recorded on a tape recorder by the officers, with the knowledge and consent of the defendant, and it was played to the jury during the trial.

At the trial defendant testified that he first met Donna in 1954 at an upholstery shop where he was employed and where she came to pose for photographs; that he next saw her at the drive-in theatre about March 18, 1955, and at that time they drove to a restaurant in Santa Ana; that on March 26 he met her at the theatre snack bar and she told him to wait for her in her car and to hide so that he could not be seen; that he climbed into the back seat of the car; that after they left the theatre he got in the front seat and they drove to an isolated dirt road and parked; that they engaged in an act of sexual intercourse, with Donna's consent, in the back seat of the car, and then drove back to the theatre to get his car; that he had another date with Donna in May and that in September, 1955, they drove to the beach near Corona Del Mar, where another act of sexual intercourse took place; that the next time he saw Donna was on January 10, 1956, when he called her about 10 p. m. and asked if he could come over to see her; that he did not arrive at her home until about 11 p. m.; that he knocked at the front door and when she did not answer, he went around to the back door and knocked; that he "jangled" the door and it popped open and he saw Donna there; that she suggested they sit in his car and talk for a few minutes; that they then drove to a spot a mile or so away and there had an act of sexual intercourse in the car, to which she consented, and that they then drove to her home; that as they approached her house she said, "There's Lloyd", jumped out of the car and told him (defendant) to "get out of there"; that he drove rapidly away and soon noticed that he was being followed by another car; that he tried to get

away, but after several miles he saw a police car which was also following him and he slowed down and stopped.

Defendant's description of the events at the time of his arrest concerning Brett's threatening him with a gun, the arrival of the officers, and admission of his false story to the officers, was substantially the same as related by the officers and Brett. Defendant said that he admitted raping the girl because he felt that his marriage was "ruined now anyway" and he thought he would at least protect Donna's reputation by saying that he had raped her.

Defendant first contends that the trial court committed reversible error by refusing to admit evidence relating to prior specific acts of sexual immorality on the part of the complaining witness. It appears from the record in this connection that during the cross-examination of Donna relative to the events occurring on the night of March 26, 1955, the following question was asked, "Had you had intercourse before that occasion?" The prosecution interposed an objection before this question was answered and the court and counsel then retired to the chambers where the matter was discussed at length. The court overruled the objection and in the presence of the jury, the question was repeated. Donna then answered "Yes." Defense counsel then asked, "How many times," and an objection made by the prosecution to this question was sustained by the court. The complaining witness was then asked how old she was, when she had intercourse for the first time, if she had intercourse more than one time and if so, with how many men. Following objections to these questions, the court again retired to the chambers with counsel and further discussion took place. Defendant's counsel contended that the questions were material for possible impeachment and that they were relevant to the question of consent. The court stated that he was concerned with the question as to how far the inquiry about previous chastity was going to go and stated he would like to have an offer of proof from the defendant as to what he proposed in that regard. Defense counsel then stated that they offered to prove by at least three witnesses who indicated that they would testify that they had had sexual relations with the prosecutrix, but that they were afraid that they might be implicated in statutory rape and would not state whether they would claim the privilege against self-incrimination. The court then stated that he was not going to subject the prosecuting witness to the ordeal of going into all of her past life in matters

of that sort; that he had reviewed the confession of the defendant and stated that he was going to limit all further proof to that which was in the record and that the prosecutrix had already admitted on the stand that she had had prior sexual relations so that her prior unchastity had been established before the jury. Defense counsel then listed certain questions which he desired to ask the complaining witness. These questions were similar to those to which objection had been sustained and the court then sustained objections to them.

Defendant cites and relies upon *People* v. *Benson*, 6 Cal. 221 [65 Am.Dec. 506] ; *People* v. *Pantages*, 212 Cal. 237 [297 P. 890] ; and *People* v. *Merrill*, 104 Cal.App.2d 257 [231 P.2d 573] in support of his first contention. ██ It is well settled that proof of unchastity is admissible where the charge of rape is by force and violence. ██ Evidence of the general reputation of the prosecutrix for unchastity together with specific acts and proof thereof were competent with respect to the two charges of rape since the defendant admitted having had sexual intercourse with the prosecutrix but asserted that she voluntarily submitted to that relationship. (*People* v. *Battilana*, 52 Cal.App.2d 685, 696 [126 P.2d 923].) ██ This rule is based upon the theory that a woman who has previously consented to an act of sexual intercourse would be more likely to consent again to such an act, thereby negating the charge that force and violence were used against her in order to accomplish the rape. The question here is whether the restraints imposed by the trial court on defendant's cross-examination were reasonable under the facts of this case. ██ It appears that the defendant made a full and complete confession to the crimes, specifically admitted that he had raped the prosecutrix by means of force and violence, and that the prosecutrix had admitted that she had had intercourse before March 26, 1955, and it further appears that the testimony of the prosecutrix was corroborated in many respects, i.e., as to the use of a knife by defendant, the marks on the throat of the prosecutrix, defendant's flight, his use of binoculars and a mask, the manner in which the prosecutrix was dressed when she returned home on January 10, 1956, and defendant's full confession. It further appears that the court instructed the jury that they could consider the prior unchaste condition of the prosecutrix as bearing on the question of whether she consented to these acts of intercourse, since they could infer that it was more likely that an unchaste woman would consent to

such acts. No contention is made herein that the evidence is insufficient to justify the verdict and the circumstances related lead us to the conclusion that although it was error to deny further examination of the prosecutrix, it was not such an error as to justify a reversal of the judgment. It does not appear reasonably probable that a result more favorable to the defendant would have been reached in the absence of the error and no miscarriage of justice resulted. (Const., art. VI, § 4½; *People* v. *Watson*, 46 Cal.2d 818, 835 [299 P.2d 243].)

Defendant's next contention is that during the trial the court erred in holding private conferences with the prosecuting attorney and the prosecutrix. In this connection the record shows that in chambers, outside the presence of the jury, counsel for defendant made the following statement:

"Mr. Meyer: We want the record to show, before we answer the Court's question, that prior to our being called in here, Mr. Williams was in the Court's chambers when the Court was present, behind closed doors, for approximately five minutes.

"We want the record to further show that upon Mr. Williams' leaving the Court's chambers, Donna Schurr, the complaining witness, was in the Court's chambers, the Court being present, behind closed doors, for approximately five minutes."

The court readily admitted he had conferred with the district attorney and the prosecutrix for five minutes during the noon recess. However, there is no evidence whatever to indicate what was discussed between the judge and either the prosecutrix or the deputy district attorney nor is there evidence that anything improper took place in these conferences. They were held outside of the presence of the jury and it does not appear that any prejudicial harm to the defendant resulted therefrom.

It is next argued that the trial court improperly allowed the jury to use a recording machine to replay the record of defendant's confession. It appears that after the jurors had been deliberating for approximately six hours they desired to hear the tape recording of defendant's confession, either in the jury room or in the court room, and so informed the court. Thereupon, the bailiff in charge of the jury was instructed by the court to fix an electrical line, to enable the playing of the recording in the jury room and to instruct the jury "as to how to operate the machine from the stand-

point of playing the tape in the machine, and how to make it run forwards or backwards and then leave them alone.'' It does not appear that the instructions given by the bailiff were given while the jury was deliberating or that anything was said by him concerning the evidence in the case. ■ The tape recording was admitted into evidence and the jury was therefore entitled to take it into the jury room with them. (*People* v. *Horowitz,* 70 Cal.App.2d 675, 703-704 [161 P.2d 833].) ■ While the recording machine was not admitted into evidence, we find no prejudicial error in its use by the jury to replay the recording. The burden of establishing prejudice was upon the defendant. (Const., art. VI, § 4½; *People* v. *Horowitz, supra,* 704.) In the absence of such a showing, we hold that the procedure followed did not constitute reversible error. ■ Section 1137 of the Penal Code, cited by appellant, is not mandatory, and what may be taken by the jury into the jury room is left to the sound discretion of the trial court. (*People* v. *Cochran,* 61 Cal. 548, 551; *People* v. *Dunlop,* 27 Cal.App. 460, 469-470 [150 P. 389].)

■ It is further contended that the following instructions were misleading and inadequate to express to the jury the applicable law on the subject. The criticized instructions are as follows:

''You are instructed that when attacked by a rapist it is primarily for the woman to decide to what extent she can with safety resist.''

''When a woman yields in sexual intercourse to a male aggressor, if her yielding has been induced by fear that it is necessary to save her from violence or death or that it offers hope of so doing, her conduct in such circumstances does not constitute consent.''

These instructions, coupled with the following instruction to the jury: ''Rape is an act of sexual intercourse accomplished with a female person, not the wife of the perpetrator, where she resists but her resistance is overcome by force or violence or where she is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of her assailant to carry out and execute such threats,'' were a correct statement of the law applicable. (*People* v. *Guldbrandsen,* 35 Cal.2d 514, 520 [218 P.2d 977]; *People* v. *Merrill,* 104 Cal.App.2d 257, 262 [231 P.2d 573].) Moreover, as is said in *People* v. *Reed,* 38 Cal.2d 423, 430 [240 P.2d 590]):

'' 'Where an instruction on a particular point or points

as given by the court is correct as far as it goes, and the only valid objection, if any, to it is that it is deficient or inadequate by reason of its generality, indefiniteness, or incompleteness, if defendant desires additional, amplified, explanatory, fuller, or more complete, elaborate, comprehensive, definite, specific or explicit instructions on such point or points, he must properly request the same, otherwise error cannot be predicated upon the failure to give such additional instruction.' (*People* v. *Carothers,* 77 Cal.App.2d 252, 255 [175 P.2d 30].)''

In the instant case, the defendant offered no such instructions in this connection and he is not now in a position to complain.

■ Defendant complains that the court erroneously refused to give the following instruction:

''You are further instructed that laws are made and juries called to investigate cases just as much for the protection of the innocent as for the punishment of the guilty. If, therefore, after a careful consideration of the evidence, you are not satisfied to a moral certainty and beyond a reasonable doubt that the defendant, Jack James Walker, is guilty, you must acquit him. By so doing, the object of the law will be as fully attained as if you were to find a verdict of guilty.''

However, from an examination of all the instructions given, it appears that the subject was amply covered by other instructions and that, therefore, it was not necessary to give this offered instruction. (*People* v. *Nelson,* 131 Cal.App.2d 571, 575 [281 P.2d 8].)

Defendant also complains that the trial court committed prejudicial error by visibly demonstrating to the jury his disbelief of some of the testimony of the defense witnesses, especially that of the defendant himself. While it has been held that jurors are quick to observe the attitude of the court toward litigants and their counsel, whether favorable or unfavorable, and to be influenced thereby (*Hays* v. *Viscome,* 122 Cal.App.2d 135, 143 [264 P.2d 173]), the record does not disclose that the court conveyed to the jury his personal opinion as to the credibility of any witness. On the contrary, it appears that the actions of the trial court were fair and impartial. The jury was instructed several times in different ways that it was the fact finding body and that it was the exclusive function of the jury to judge the credibility of the various witnesses. As is said in *People* v. *Collins,* 4 Cal.App.2d

86, 88 [40 P.2d 542] : " 'The misconduct of a trial judge which will warrant a reversal of the judgment should be so definite and apparent as to leave little doubt that it has resulted in depriving the accused of a fair and impartial trial.' " The mere statement of the defense counsel that in his opinion the trial judge expressed his disbelief as to the testimony by his facial expressions is not a sufficient showing of judicial misconduct.

 Finally, defendant argues that the deputy district attorney committed prejudicial error in his argument to the jury in referring to a rape case in Costa Mesa. His remarks in this connection are as follows:

"I don't know whether the sheriff's office here, like some places in Los Angeles, subscribe to the theory that there is no rape after twelve o'clock, or not, or whether they are getting so tired of rape that they don't want to have anything to do with it, or whether they feel that most girls will back out on a rape case, anyway, because they won't subject themselves to the shame and the loss of self-respect that arises out of a trial like this. Very few women would. You are just fighting a losing battle if you report it. You get raked over the coals worse than the guy that did it. If you don't give in, you wind up like this case in Costa Mesa. How are you going to win, any way you take it?"

The remark referring to the case in Costa Mesa was assigned by defense counsel as prejudicial error. Whereupon the court instructed the jury as follows:

"Well, you are not concerned . . . first of all, ladies and gentlemen, you are to listen to the arguments of counsel, but you are not to consider them as evidence, and any statements made by counsel are to be disregarded by you in your analysis of the case, and certainly you are not to—there is no evidence in this case about anything in Costa Mesa, so you will completely disregard it."

Counsel for the prosecution then stated that he thought the point was well taken and apologized to the jury. We conclude that any harmful effect of the statement was obviated by the timely admonition of the court and the apology of the deputy district attorney. This is not a case where the evidence is closely balanced, presenting grave doubt as to the defendant's guilt, so that the assailed argument of the deputy district attorney may have contributed materially to the verdict.

(*People* v. *Byrd*, 42 Cal.2d 200, 208 [266 P.2d 505].) No reversible error appears in the record.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied May 21, 1957, and appellant's petition for a hearing by the Supreme Court was denied June 26, 1957.