Jane ORTNER, Appellant,

v.

George TERRY, Respondent.

No. 36,553.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Feb. 3, 1976.

Rehearing Denied Feb. 26, 1976.

Cox, Moffitt & Cox, Dallas W. Cox, Jr., St. Louis, for appellant.

Armstrong, Teasdale, Kramer & Vaughan, Larry B. Luber, John J. Cole, St. Louis, John W. Hammon, Hillsboro, for respondent.

CLEMENS, Judge.

Plaintiff Jane Ortner had a verdict and judgment for $20,000 for injuries suffered in an automobile collision June 23, 1972. She appeals on the ground that inadmissible evidence adversely affected the amount of her verdict, contending the trial court erred in admitting into evidence four letter-reports written by a consulting physician. Dr. W. H. Wurr, the treating physician, had referred plaintiff to Dr. Paul Stohr, a neurosurgeon, for consultation, examination and treatment; the letter-reports had been written by Dr. Stohr to Dr. Wurr.

Plaintiff received multiple injuries in the collision, particularly a severe blow on her head. She was unconscious when admitted to the hospital and soon developed headaches, causing Dr. Wurr to suspect intracranial bleeding. A week later plaintiff went into a coma, required artificial respiration, and upon recovery her reactions were slow and her speech slurred. Dr. Wurr called Dr. Stohr and this relationship between plaintiff and the two doctors continued for a year and a half, until shortly before trial. Dr. Wurr considered Dr. Stohr to be a competent neurosurgeon and was satisfied with his services to the plaintiff.

We need not detail plaintiff's extensive objective and subjective states of physical ill-being. They were several before the collision, but not severe, and she had been fully engaged as an office clerk and homemaker. She contends that after the collision her states of ill-being were severe and eventually rendered her unemployable and in need of nursing care. As usual in such cases, there were diverse contentions about the causation.

Dr. Wurr testified in detail at trial about having examined and treated plaintiff for several years before the accident, particularly the two years thereafter, during which time she had been jointly seen by Dr. Stohr, the consulting neurosurgeon. Plaintiff read into evidence the deposition of Dr. Stohr. Dr. Stohr had examined and treated plaintiff four times and had promptly written Dr. Wurr to report his findings and recommendations.

Defendant cross examined Dr. Wurr about these four documents written by Dr. Stohr and they are the core of plaintiff's appellate contentions. We recite them in chronological order. (When, why or by whom the underlined portions were so marked is not shown by the record.)

Exhibit D

"Neurosurgery, Inc., Francis S. Walker, M.D., Paul E. Stohr, M.D., August 31, 1972. Re: Ortner, Jane. Dear Dr. Wurr: Jane Ortner was seen in the office today. She is doing extremely well. She is gradually increasing her activities. Many thanks for sending her to us. Sincerely, /s/ Francis S. Walker, M.D."

Exhibit A

"Office Records. Re: Jane Ortner. May 25, 1973. Mrs. Ortner was seen in the office today. Since discharge from the hospital has continued to have mild sensory and motor deficit on the left side. After returning to work as an accounting clerk she noted increasing difficulty with right sided headache. This usually began at work and was relieved by laying down. There is no warning with the headache. When the headache is very severe she has increasing deficit on the left side plus difficulty with her speech. She has noticed no visual symptoms and when the headache is over she has no aftereffects. Tuesday of this week she began to have a headache. It occurs in waves of pain, terribly severe, has remitted very little and has not been controlled by Darvon and Darvon-N. She has had no difficulty with hypertension, she states that there is no family history of migraine. She has no history of seizures. She has had no stiff neck with the present episode and <u>her history certainly does not suggest recurrence of subarachnoid hemorrhage</u>.

"On examination her fundi are normal. Pupils are equal and react well. Visual fields are full. Extraocular movements are normal. There may be a very mild left central facial weakness. <u>Speech is hesitant, understanding is perfect</u>. There is very mild left sided weakness in arm and also the leg with symmetrical reflexes and no Hoffmann or Babinski sign. <u>There is no extinction to simultaneous touch,</u> figure writing is well recognized on the left side although she states subjectively the left side does not feel quite normal. I have decided to try her on Ergomar since I think that the history suggests <u>migraine or vascular type headache</u> and have told her that if she does not feel better tomorrow that she should call me tomorrow and we would consider hospitalization.

"I have pointed out to her the dangers of the medication."

*     *     *     *     *     *     *

Exhibit B

"October 12, 1973. Dr. D. H. Wurr, Arnold Medical Center, Arnold, Missouri. Re: Ortner, Jane. Dear Dr. Wurr: Mrs. Ortner was seen in the office today. She is seen today because she has fallen three times in the past few weeks. She had been walking unassisted and her major problems seem to be stuttering speech and decreased mental dexterity. She has noticed no change in strength or sensation in the left lower extremity, no change in upper extremity function although it remains less useful than the right upper extremity. She has not had any blackout spells or other evidence of seizure disorder. She is walking well with a cane with the left ankle bandaged. Her pupils are equal and react well. Fundi are normal. Visual fields are full. <u>There is no facial weakness</u>. There may be some <u>very mild diffuse weakness in the left upper extremity but a full range of motion with normal reflexes, normal sensation to</u> pinprick and to figure <u>writing on the fingertips was noted</u>. There

is <u>no extinction to simultaneous touch</u> in <u>the upper extremities</u>. She walks slowly with a cane but her gait seems to be stable. She can walk on her heels and toes. She can squat and rise and can support all of her weight on the extended left lower extremity. Reflexes are normal. Proprioception is normal. There may be a mild patch of hypalgesia to pinprick but no dermatomal loss. Strength is very good in the left lower extremity and in all muscle groups.

"<u>I cannot explain this lady's tendency to fall</u>. Finger to nose <u>testing is well done</u>. She holds <u>the Romberg position without</u> difficulty. I suggest that she get <u>an elastic knee support and to return</u> if she has continued disability.

"Sincerely, Paul E. Stohr, M.D."

"February 8, 1974. Re: Ortner, Jane. Dear Dr. Wurr: Jane Ortner was seen in the office today. She tried to return to work one day and found that she could not get going and keep up with the work because of mental slowness. On another occasion, in a beauty parlor, she felt dizzy and began crying and had to be helped from the parlor to your office. Since that time, she has had insomnia, persistent depression with crying, stuttering and mental slowness and headache. The headache is mainly right hemicrania. It is frequent and often not very severe but she seems to <u>ruminate on the pain</u>. She has noticed no other change in her neurological status. She still feels that her grip on the left is less than on the right and she still has a tendency to drag the left lower extremity which feels heavier than the right.

Exhibit C

"On examination, she is obviously depressed and stuttering and is mentally slow. Palpation of the head is unremarkable. Pupils are equal and reactive. Fundi are normal. Visual fields are normal. There is no facial weakness. Lower cranial nerves are intact. She has very mild weakness of the left grip and mild hyperreflexia on the left side, mild diffuse weakness of the left lower extremity. Sensation to touch reveals no extinction. Proprioception is good bilaterally and figure writing is well recognized on the fingertips of both hands.

"Obviously, this lady is depressed but her disability is so that she should be admitted to the hospital, I think, for work up. She should have skull films, BS, a right brachial angiogram and pneumoencephalogram and assuming that these tests are normal, a <u>psychiatric consultation</u> should be sought. Her gait shows a mild apractic disturbance so that occult hydrocephalus must even be considered.

"Directly to be admitted to Firmin Desloge Hospital February 11, 1974.

"Sincerely, /s/ Paul E. Stohr, M.D."

*     *     *     *     *     *     *

In chambers, after Dr. Wurr's direct testimony, defense counsel told the court he intended to use the four documents to cross examine Dr. Wurr. Plaintiff objected basically to the documents as not qualifying as business records, and also objected to their

ultimate admission for several specific reasons. The trial court understood defense counsel was offering the four documents as Dr. Wurr's business records instead of records of the writer, Dr. Stohr, and ruled them inadmissible "unless the defense is able to establish that the documents were prepared by Dr. Stohr pursuant to the Uniform Business Records as Evidence Act." (§ 490.660 et seq. RSMo 1969).

As defense counsel prepared to call in a qualifying witness from Dr. Stohr's office, plaintiff's counsel waived that necessity, agreeing that the four documents met the requirements of the Business Records Act as to preparation and custody. Plaintiff's counsel did reserve the right to make specific objections to parts of the documents.

Defense counsel's cross examination of Dr. Wurr included the following pertaining to Dr. Stohr's four written reports:

Exhibit D. Dr. Wurr recalled the initial August 31, 1972 letter from Dr. Stohr's office stating "she [plaintiff] is doing extremely well. She is gradually increasing her activities." Dr. Wurr testified he understood that to mean plaintiff had shown good recovery considering her grave condition and further neurological studies were negative.

Exhibit A. In Dr. Stohr's May 25, 1973 report he related plaintiff's complaints of severe headaches and that "her history certainly does not suggest recurrence of subarachnoid hemorrhage . . . but suggests migraine or vascular type headaches." Dr. Wurr disagreed with that opinion and expressed his own opinion that plaintiff's headaches were the result of the original hemorrhage.

Exhibit B. Dr. Wurr had received Dr. Stohr's October 12, 1973 report stating plaintiff said she had fallen three times in the past week and Dr. Stohr's comment he could not explain her tendency to fall. Dr. Wurr testified he had observed plaintiff's unstable walk but she had never told him of falling.

Exhibit C. In Dr. Stohr's last report of February 8, 1974 he noted plaintiff was depressed and her disability so great she should be hospitalized for tests, and "assuming these are normal, a psychiatric consultation should be sought." Dr. Wurr did not recall discussing this with Dr. Stohr, but interpreted the letter only as a recommendation for hospitalization.

At the close of evidence, defense counsel offered the four documents in evidence. The trial court "allowed the introduction" of the four exhibits but simultaneously refused defendant's request to pass them to the jury. Plaintiff now contends Dr. Stohr's letter-reports were inadmissible and adversely affected the extent of her recovery.

▮ A trial court has wide latitude in allowing cross examination of expert witnesses. *Faught v. Washam,* 365 Mo. 1021, 291 S.W.2d 78[14, 15] (1956). Here, Dr. Wurr had referred plaintiff to Dr. Stohr, a specialist in whom he expressed confidence. The two doctors consulted and worked together in treating plaintiff. We hold it was proper to allow defendant to cross examine Dr. Wurr on the basis of statements Dr. Stohr had made to Dr. Wurr about plaintiff in the course of treating her. This is akin to cases where counsel is permitted to cross examine a doctor on the basis of a medical textbook, particularly where the witness has acknowledged the text is authoritative. We hold the trial court properly allowed cross examination of Dr. Wurr on the basis of the reports Dr. Stohr had made to Dr. Wurr. Compare *Gridley v. Johnson,* 476 S.W.2d 475[3–4] (Mo.1972).

▮ Plaintiff now argues it was error to permit Exhibits A, B, C and D to be used to cross examine Dr. Wurr because there was no adequate foundation for them under the Uniform Business Records as Evidence Act. Plaintiff argues the exhibits were not business records of Dr. Wurr. This is not the point, since the letter-reports were not used as Dr. Wurr's records but as records of Dr. Stohr who wrote them. Plaintiff next

argues these exhibits were not admissible as Dr. Stohr's records. This contravenes plaintiff's trial concession concerning their basic admissibility without waiving the right to specific objections. The right to challenge the admissibility of these exhibits as business records was waived in the trial court.

The only specific objection briefed by plaintiff is that when plaintiff took Dr. Stohr's perpetuation deposition defense counsel "did not inquire of the contents of said office note and letters [Exhibits A, B, C and D], thereby denying any opportunity to plaintiff for any redirect examination" to rehabilitate Dr. Stohr. Plaintiff's *premise* is that defense counsel had the four exhibits when plaintiff took Dr. Stohr's deposition; her *conclusion* is that defendant thereby waived his right to use the exhibits to cross examine Dr. Wurr at trial. The record does not support plaintiff's premise; it does not show defense counsel had received the four documents when plaintiff deposed Dr. Stohr. We need not rule on her conclusion since plaintiff's premise falls.

Plaintiff now contends the trial court erred in granting the jury's request for exhibits, particularly A, B, C and D. We quote what occurred at the close of evidence.

"MR. COLE: Like Exhibits A, B, C and D, which have been identified in the record. I would like to introduce those and pass them to the jury.

"MR. COX: I object to those, because they are medical reports and there has been testimony about them and cross examination, and it is not proper for the jury to see them.

"THE COURT: May I see them? The Court will allow the introduction of A, B, C, and D . . .

"MR. COX: May I make a record on that?

"THE COURT: Yes, you may. I was about to say I would deny the jury the use of reading the reports. I will deny the jury the right of reading the reports.

"MR. COLE: They are admitted?

"THE COURT: Yes."

Thus, Exhibits A, B, C and D were introduced in evidence, but neither read nor shown to the jury. Thereafter, when the jury retired to deliberate, the following occurred:

"MR. COX: I make a specific objection [sic] Defendant's Exhibits A, B, C and D with respect to their being given to the jury, *in that there already has been testimony and cross examination on Defendant's Exhibits A through D.*

"THE COURT: But they were admitted into evidence, were they not? Your objection being to passing them to the jury?

"MR. COX: They are piecemeal reports. They are not in total . . . ."

"THE COURT: Overruled."

Plaintiff's only specific objection to giving Exhibits A, B, C and D to the jury was that they were already in evidence. We limit our review to that objection. Giving admitted exhibits to the jury was discretionary. *Yeager v. Wittels,* 517 S.W.2d 457[17] (Mo.App.1974). We find no abuse of discretion considering counsel's specific objection that the exhibits were already in evidence.

Plaintiff's last point concerns the trial court's refusal to admit Item 16 of the Exhibit 21. That document was a "personnel test" plaintiff had taken three years before her injury when she applied for employment. Item 16 of the test was a list of multiple-digit numbers in two parallel columns, and the test was to tell which were identical. The trial court refused plaintiff's proffer to show plaintiff had answered correctly. Plaintiff contends the item was relevant since it showed she did well on that test. Conceding some relevance, the item was cumulative. Plaintiff, her doctor, her husband and three others had already testified about plaintiff's comparative conditions before and after her injury. The ex-

clusion of evidence is harmless where it is cumulative and the fact has been established by other evidence. *Steele v. Yacovelli*, 419 S.W.2d 477[4, 5] (Mo.App.1967). We hold the offered item was cumulative and find no prejudicial error in its rejection.

Judgment affirmed.

KELLY and STEWART, JJ., concur.