STATE of Missouri, Respondent,

v.

Eddie Lee EVANS, Appellant.

No. 62748.

Supreme Court of Missouri,
En Banc.

June 14, 1982.

As Corrected Oct. 12, 1982.

T. Patrick Deaton, Jr., Asst. Public Defender, Clayton, for appellant.

John Ashcroft, Atty. Gen., Kelly Klopfenstein, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Presiding Judge.

Appellant Evans was convicted of first degree murder, § 565.003, RSMo 1978, and sentenced to life imprisonment, § 565.-008(2), RSMo 1978. This Court has exclusive appellate jurisdiction in this case. Mo. Const. art. V, § 3. Appellant challenges the order in which the trial court conducted certain pretrial proceedings, the prosecutor's impeachment of a state's witness, and the action of the trial court in permitting the jury to hear during its deliberation a tape recording of appellant's confession. We hold that no prejudice resulted from any of the trial court's allegedly erroneous actions. We affirm.

Because the sufficiency of the evidence is not challenged, an abbreviated recitation of the facts developed at trial will suffice. Paula Christine Gregory testified that she awoke at approximately 2 a.m. August 23, 1979, to her daughter's cries that a burglar was in the house. After attempting to calm her daughter, Ms. Gregory walked down the hallway of the house to investigate, and she saw appellant standing in the living room. She ran back down the hall-

way screaming to Joe St. Pierre, with whom she lived, that someone definitely was in the house. St. Pierre confronted appellant at the bedroom door, and a struggle ensued in the couple's bedroom. St. Pierre was stabbed with a butcher knife, which Ms. Gregory observed during the struggle. St. Pierre then left the bedroom with appellant following him. Ms. Gregory heard St. Pierre, or someone, trying to get out the front door, which was locked.

Shortly thereafter, appellant returned to the bedroom, ordered Ms. Gregory to take off her clothes, and raped her. Appellant searched the house for money and guns, taking Ms. Gregory with him. He raped Ms. Gregory again, collected the money and a color television set, and forced Ms. Gregory to accompany him in her car.

Appellant drove around quite a long time, stopping at a small outdoor restaurant for food. Finally, appellant drove to a housing project area in the City of St. Louis. He wrapped up the television, a CB radio, and money in car seat covers. He also took a radar detector, a power booster, and a $3.00 bracket. At this point, Ms. Gregory left the area as quickly as possible to report the events to the police.

At approximately 5:30 a.m. August 23, 1979, Detective Lonnie Speer of the Kirkwood Police Department arrived at the Gregory-St. Pierre home. Officer Speer observed a man on the living room floor near the front door. Blood was splattered throughout the house and on the walls. Officer Speer determined that entry into the house had been made through a plastic window in the basement. Robert Nichols, a latent fingerprint examiner for the St. Louis County Police Department, testified that a fingerprint found at the scene matched appellant's fingerprint.

Dr. George Ganter, chief medical examiner for St. Louis County, testified that St. Pierre had died from two significant stab wounds. Although there were thirteen stab wounds in all, one stab wound in the heart and another in the victim's back were most likely the cause of death. Dr. Ganter stated that the wounds were caused by a point-ed sharp weapon, very possibly a butcher knife. Death was caused by massive internal hemorrhaging from the wounds.

Appellant makes three assignments of error in this case. He argues that he was prejudiced by the cumulative impact of the trial court's actions and that reversal therefore is required. He contends (1) that he was prejudiced because the trial court ordered voir dire to proceed before the hearing on his motion to suppress his incriminating statements, thereby preventing him from asking the prospective jurors whether they believed an innocent person could ever make an incriminating statement; (2) that the trial court erred in permitting the prosecutor to impeach his own witness; and (3) that the court erred in giving the jury a tape recording of his confession that had not been played during trial because the court thus allowed the jury to hear facts not admitted into evidence.

I

A panel of sixty prospective jurors had been drawn in this case before the beginning of trial on November 17, 1980. Before voir dire, the court indicated to counsel in chambers that the panel would be informed of the nature of the case and the expected duration of the trial and that after panel members for whom the proceedings would present hardship or problems had been excused, the remaining panel would be sworn to begin voir dire.

Appellant's counsel then made this record: "I feel it is in the defendant's and my best interest to hear these motions [to suppress evidence, identification, incriminating statements, etc.,] completely and fully before the jury selection process has begun." The court then stated its intention to begin the voir dire that morning so that when an acceptable panel of thirty-four prospective jurors became available, those thirty-four could be sent home with directions to return the next day with luggage for two to three days. When the panel returned, the jurors were to be announced, the jury sworn, and the other veniremen dismissed. Appellant's counsel made no further record on this mat-

ter. Only in his motion for new trial did appellant assert that he had been prejudiced because he was not able to ask the prospective jurors whether they believed an innocent person could ever make an incriminating statement. Appellant's formal specific objection to this preliminary proceeding in his motion for new trial comes too late to preserve this preliminary matter for appellate review, *State v. Small,* 386 S.W.2d 379 (Mo.1965); *State v. Branstuder,* 589 S.W.2d 85 (Mo.App.1979), and we find no manifest injustice necessitating review for plain error, Rule 84.13.

## II

■ During trial, Beverly Moppins, who worked the night shift at the Academy Barbeque in St. Louis, testified that in the early morning hours of August 23, 1979, an apparently nervous young man who had "splotches" on his shirt came to the restaurant. On direct examination Ms. Moppins stated that she could not identify the person if she saw him again. She testified that she had not been able to identify anyone from the photographs the police showed her. On cross-examination Ms. Moppins unequivocally responded that appellant was not the person she had seen that night. On redirect, the prosecutor asked Ms. Moppins if she knew appellant's mother and then proceeded:

Q: And isn't it true you said you could never tell who it was? You couldn't remember who it was?

A: Yes.

Q: And, when you were shown a picture of Eddie Evans, you said you didn't know whether it was him or not?

A: I said I could not identify the man if he was standing right there near me.

Appellant characterizes the prosecutor's redirect examination as improper impeachment of his own witness. We disagree. The prosecutor was not impeaching his witness but was properly interrogating her to refute the responses elicited during cross-examination. When there is a real or apparent inconsistency in a witness' testimony, the witness may be questioned on redirect examination to straighten out the inconsistency. *State v. McKinney,* 475 S.W.2d 51 (Mo.1971). The trial court properly overruled the objection on the grounds of impeachment. The witness had testified on direct examination that she could not identify the man who was at the diner that night, yet on cross-examination she said defendant definitely was not him. The prosecutor was attempting to point up and straighten out the inconsistency. *State v. McKinney.* Appellant's second point is denied.

## III

■ Finally, appellant claims that the jury should not have been permitted to hear during its deliberation a tape recording of appellant's confession that had not been played at trial. This, he asserts, allowed the jury to hear facts not admitted into evidence or, at least, to hear evidence in a different form.

Detective Lieutenant Jerome O'Keefe of the Kirkwood Police Department testified that he taped an interview with appellant on September 19, 1979, during which appellant admitted murdering St. Pierre. Detective O'Keefe identified State's Exhibit No. 28 as the tape recording of the confession and testified to the contents of the recording. Following Detective O'Keefe's authenticating testimony, and over appellant's objection that an improper foundation existed for admission of the recording, Exhibit 28 was received into evidence.

Detective O'Keefe testified that appellant stated that he had broken into the Gregory-St. Pierre home by breaking a basement window, that he had admitted the use of a knife as his weapon, that he did not know the people in the house, that he noticed no cars parked in the driveway, and that he had discarded the knife as he left the house. Appellant stated that his purpose in entering the house had been to get money. He denied taking the television.

During its deliberation the jury requested to hear the tape recording. Appellant's counsel objected because the tape had not

been played in court and because Detective O'Keefe's testimony had only excerpted the contents of the tape. The trial court granted the jury's request for the tape inasmuch as the tape had been admitted into evidence as State's Exhibit No. 28.

We have listened to the tape recording of appellant's confession and find that he was not prejudiced by the court's order permitting the jury to hear it. Detective O'Keefe's testimony regarding the contents of the interview was accurate. Defendant's statements therein regarding the rape of Ms. Gregory, other activities in the house, the trip to the diner, and the final drive to the housing project had already been heard by the jury in the testimony of Ms. Gregory and Ms. Moppins. The only discrepancy between the evidence as heard at trial and the tape recording came in the form of appellant's testimony at trial after the court had received Exhibit No. 28 into evidence and after Detective O'Keefe's testimony.

█ The general rule is that exhibits that are testimonial in nature cannot be given to the jury during its deliberation. An exception, however, is made for written or recorded confessions in criminal cases, apparently on the theory that their centrality to the case warrants it. C. McCormick, Handbook of the Law of Evidence § 217, at 540 (2d ed. E. Cleary 1972). Several courts have held that there is no error in giving the jury the recording of a defendant's confession. *See, e.g., People v. Walker,* 150 Cal.App.2d 594, 310 P.2d 110 (1957); *State v. Triplett,* 248 Iowa 339, 79 N.W.2d 391 (1956), *cert. dismissed,* 357 U.S. 217, 78 S.Ct. 1358, 2 L.Ed.2d 1361 (1958); *State v. Gensmer,* 235 Minn. 72, 51 N.W.2d 680 (1951), *cert. denied,* 344 U.S. 824, 73 S.Ct. 24, 97 L.Ed. 642 (1952); *State v. Reyes,* 209 Or. 595, 607, 308 P.2d 182 (1957). This exhibit, which was properly authenticated and admitted, did not unduly emphasize facts that were already received in evidence. *See State v. Hale,* 371 S.W.2d 249 (Mo.1963); *State v. Howard,* 360 S.W.2d 718 (Mo.1962); *Ortner v. Terry,* 533 S.W.2d 640 (Mo.App. 1976); Annot., 37 A.L.R.3d 238 (1971). Nor

did the exhibit reveal facts not in evidence. The confession clearly was voluntary; appellant was read his rights before the interrogation, and he was neither harassed nor coerced. Appellant has shown no prejudice resulting from this discretionary act of the trial court.

The judgment is affirmed.

The Division Two opinion of WELLIVER, J., is adopted as the opinion of the Court en Banc.

DONNELLY, C.J., RENDLEN, HIGGINS and GUNN, JJ., and FINCH, Senior Judge, concur.

SEILER, J., dissents in separate dissenting opinion filed.

SEILER, Judge, dissenting.

Appellant in his point III argues that it was error for the trial court to allow the jury to play defendant's taped confession in the jury room when it had not been played in open court. The state had offered the tape during Detective O'Keefe's testimony, but whatever the reason may have been (no explanation appears in the record), it was simply admitted into evidence without ever being played before or heard by the jury. Not only had the tape not been played in open court, but the trial judge had not listened to it prior to giving it to the jury. The jury thus was allowed to listen to a tape recording which had not been examined for irrelevant material and to hear for the first time, in the confines of the jury room, the defendant's own voice in a confession. The timing was perfect for the state in obtaining a conviction.

The principal opinion concludes that it was not error to allow the jury to listen to the tape recording because it contained nothing that had not been introduced into evidence. This after the fact ad hoc analysis, in my view, establishes a dangerous precedent unsupported by the cited cases, which concern playing confessions in the jury room *which have previously been played in open court.* The tape recording evidently assumed great importance in the

eyes of the jury, because the jury specifically asked for it and beyond question listened to it in the jury room. What happened here is not the proper way to get important evidence before the jury. I respectfully dissent.