**STATE of Missouri, Plaintiff–Respondent,**

v.

**James REED, Defendant–Appellant.**

No. 23204.

Missouri Court of Appeals,
Southern District,
Division One.

May 22, 2000.

Nancy A. McKerrow, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Barbara K. Chesser, Asst. Atty. Gen., Jefferson City, for respondent.

KENNETH W. SHRUM, Judge.

A jury convicted James Reed (Defendant) of two counts of first degree robbery, § 569.020, one count of class B felony assault in the first degree, § 565.050, and three counts of armed criminal action, § 571.015.[1] In total, the trial court sentenced Defendant to twenty-nine years in the penitentiary.

On appeal, Defendant claims the trial court "plainly erred" when, at the jury's request and during its deliberations, the court let the jury review a transcript of the preliminary hearing testimony of a witness who had died before trial. Defendant asserts reversal is mandated, even under the plain error standard of review, because the exhibit given the jury included the preliminary hearing judge's probable cause ruling.

We affirm.

At trial, a supermarket employee and a man delivering bread to the store identified Defendant as their assailant during his attempt to rob the store. This occurred early on August 7, 1998, in Portageville, Missouri, before the store opened. During the incident, Defendant took purses and their contents from store employees Betty Davidson and Annie Washington, thus giving rise to the robbery charges. Defendant also displayed a pistol as he robbed the women and assaulted Richie Lancaster, the delivery man.

At Defendant's preliminary hearing, Earnestine Wells testified for the state. On August 7, 1998, Wells lived in the same house as Defendant. When Defendant came home that morning, he asked his father if he had "heard anything across the scanner about a robbery." Defendant then talked to Wells, telling her he had gone in a store and made two women open a safe. Continuing, Defendant told Wells that as he came out of the store, a person delivering bread "grabbed him" and they began fighting. During the fight Defendant dropped both the money and his gun. Later, Defendant got free of the bread delivery man, jumped in a van, and drove away. As they talked, Defendant showed Wells "papers and ... credit cards" or "bank cards" bearing the names of "Betty David[son] ... and Annie Washington." Wells recalled Defendant was "kind of shaking" and "nervous" as they talked that morning.

By the time of trial, Earnestine Wells had died. Accordingly, the State read her testimony from the preliminary hearing to the jury. Later, as the jury deliberated, it asked for transcripts of the preliminary hearing testimony of Lancaster and Wells. The trial judge refused the jury's request for Lancaster's testimony but gave them the Wells transcript, marked exhibit 10. This occurred without objection from defense counsel.

The transcript given the jury contained information not previously read to the jury:

"MR. RECKER [Assistant Prosecuting Attorney]: That is all the State has, Your Honor.

"THE COURT: Ms. Bolton [defense counsel], do you have any witnesses?

"MS. BOLTON: No, sir.

"THE COURT: All right, based upon the testimony that has been received by

---

1. Unless otherwise stated, all statutory references are to RSMo 1994.

the Court today, (inaudible) the Court does in fact find that there is probable cause to believe [Defendant] may have in fact committed the Counts I, II, III, IV, V, and VI as alleged (inaudible). And the Court hereby orders him to appear upstairs in Division I."

Defendant's only point relied on complains the trial court "plainly erred" when it acceded to the jury's request to review exhibit 10 during its deliberation. Defendant admits in his brief this point has not been preserved. Thus, we review for plain error.

■ Under plain error review a Defendant bears the burden of showing that the trial court's action was not only erroneous, but that the error so substantially affected his or her rights that a manifest injustice or miscarriage of justice will result if the error is not corrected. *State v. Hope*, 954 S.W.2d 537, 541[1] (Mo.App.1997); Rule 30.20.[2]

Defendant claims there are two reasons why the court plainly erred in giving the jury the preliminary hearing transcript excerpt. First, Defendant cites *State v. Evans*, 639 S.W.2d 792, 795 (Mo.banc 1982) and *State v. Brooks*, 675 S.W.2d 53, 57 (Mo.App.1984) for the general rule that exhibits testimonial in nature cannot be given to the jury during its deliberations. The reason often given for the rule is that testimonial exhibits tend to unduly emphasize some of the testimony, thus raising the possibility the jury would give it undue weight. *Evans*, 639 S.W.2d at 795. However, *Evans* and *Brooks* are distinguishable as they are not "plain error" review cases. Further, *Evans* did not actually apply the general rule against giving testimonial exhibits to the jury—it merely recited the rule via dicta. Instead, *Evans* recognized and applied an exception to the general rule, namely, there is no error in giving the jury the recording of a defendant's confession. 639 S.W.2d at 795[4].

*Brooks* is also factually distinguishable. Unlike this case, the depositions which the defendant asked be given the jury in *Brooks* had not been read in their entirety and neither were they marked as exhibits or admitted in evidence.

Without explicitly saying so, Defendant appears to concede the distinctions between *Evans* and *Brooks* and this case. We deem this so because in the argument part of Defendant's brief he never develops his claim that giving Wells's preliminary hearing testimony to the jury during deliberations, by itself, caused a manifestly unjust result or miscarriage of justice. Defendant goes instead to the second prong of his point relied on. There, Defendant points out what was given the jury contained more than Wells's preliminary hearing testimony and included facts not in evidence, i.e., the preliminary hearing judge's probable cause finding. He suggests although jury members knew Wells had testified at an earlier stage of the case, they could not be expected to understand the function or purpose of a preliminary hearing. He argues that giving the preliminary hearing judge's ruling to the jury via exhibit 10 gave its members the idea a judge found Wells's testimony credible and found probable cause existed to believe Defendant had committed the crimes as charged. Continuing, Defendant asserts "[l]ay jurors cannot be expected to understand a probable cause finding is something less than a finding of guilt beyond a reasonable doubt." With this as his premise, Defendant goes further, saying "[i]n this exhibit, they [jury members] were told that a judge was convinced of [his] guilt." Accordingly, he argues that giving the jury such information "during deliberations was clearly not harmless."

Defendant relies heavily on the following cases and principles to support his argument that giving exhibit 10 to the jury rose

**2.** Rule 30.20 provides that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

to the level of plain error. First, he asserts what happened here was analogous to a trial court denying a motion for judgment of acquittal in front of the jury, a procedure condemned in *United States v. Coke*, 339 F.2d 183, 186 (2d Cir.1964) and *United States v. Gaffney*, 676 F.Supp. 1544, 1553 (M.D.Fla.1987).

Second Defendant contends giving the jury exhibit 10 with a probable cause finding contained therein was akin to a trial judge summing up or commenting on evidence in a criminal case or charging the jury as to questions of fact, a practice held to be reversible error in *State v. Lomack*, 570 S.W.2d 711, 713 (Mo.App.1978).

Third, he relies on *State v. Cook*, 676 S.W.2d 915 (Mo.App.1984). There, a juror called the St. Louis University Meteorological Department before deliberations began to find out if it had rained on the day of the robbery as Defendant's alibi witnesses testified, or if it was sunny as a witness for the state testified. After learning of the call, the trial judge conducted a hearing at which the juror in question testified the rainfall information was not used in deliberations. Defendant's request for mistrial was denied and he appealed. The eastern district reversed, saying:

> " 'The receipt by a juror or jury of possibly prejudicial information during the trial of a felony case requires that the verdict be set aside unless the harmlessness of the information be shown.' The state has the burden of proving that the information was harmless. The state has failed to prove that the information concerning the rainfall was not prejudicial to the defendant."

*Id.* at 917[4,5] (citations omitted).

Defendant's cases and the principles mentioned therein do not mandate reversal. First, *Coke* and *Gaffney* are not binding on this court. *See Bright v. State*, 4 S.W.3d 568, 571 (Mo.App.1999).

Second, even if we were to inclined to follow *Coke* and *Gaffney*—a choice we need not and do not make—this is not a case "where the evidence to convict rested so heavily on the testimony of one witness," as in *Coke*, 339 F.2d at 186. Neither is it a case where "a myriad of extraneous information made its way in the jury room during the trial and the deliberations," as in *Gaffney*, 676 F.Supp. at 1552. As we explain below, there is abundant evidence of Defendant's guilt. These differences clearly distinguish *Coke* and *Gaffney* from this case.

■ Third, we note all the cases cited by Defendant are easily distinguishable from this case as they do not involve plain error review. *See Hope*, 954 S.W.2d at 541. *Plain error* and *prejudicial error* are not synonymous terms. *State v. Valentine*, 646 S.W.2d 729, 731[4] (Mo.1983); *State v. Varvera*, 897 S.W.2d 198, 201[6] (Mo.App.1995). "An assertion of plain error places a much greater burden on a defendant than an assertion of prejudicial error." *State v. Williams*, 945 S.W.2d 575, 580[9] (Mo.App.1997).

■ Defendant simply has not established furnishing the jury exhibit 10 gave rise to a manifestly unjust result or a miscarriage of justice. His argument that providing the probable cause ruling to the jury was like telling the jury "a judge was convinced of [Defendant's] guilt" is neither logical nor supported by authority. Moreover, there is in this case overwhelming evidence indicating Defendant's guilt. *See Hope*, 954 S.W.2d at 541. Eyewitness testimony identified Defendant as the person committing the crimes. The jury heard Wells testify about her conversation with Defendant in which he gave her details about the crimes. Wells's testimony included Defendant's admission that he left the crime scene in a van. Police found the van—which belonged to victim Davidson—abandoned in Portageville near the home of Reginald West. West told the jury a man came to his door the morning of August 7, 1998, and asked for a ride to Hayti, Missouri. At first West refused but finally agreed. As West prepared to leave,

the man took his shirt off and put it on West's porch. Later, West gave the shirt to police after finding blood stains on it.[3] Police then asked West to drive around Hayti and look for the man in question. West did so and then told police he believed a man standing at 404 North Maple "was the suspect." Defendant's father and step-mother lived at that address. Also, there was evidence a revolver used in this robbery was found in a culvert in front of West's house.

Given the presence of this and other evidence of Defendant's guilt, there is not in this case a strong, clear demonstration of manifest injustice or miscarriage of justice. *Varvera*, 897 S.W.2d at 201. We are not persuaded giving this testimonial exhibit to the jury while it deliberated, even with the probable cause finding as part of the exhibit, so substantially affected Defendant's rights that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. Point denied.

The judgment of conviction is affirmed.

CROW, P.J., concurs.

PARRISH, J., concurs in separate opinion.

JOHN E. PARRISH, Judge, concurring.

I concur. I find no manifest injustice or miscarriage of justice in this case.

I write separately to emphasize that this is a case of plain error review and to suggest that this case should not be relied on as authority for the proposition that a trial court has carte blanche authority to provide a written deposition (or a written transcript of preliminary hearing testimony) that has been read in evidence to a jury for the jury's review during deliberations. In *State v. Brooks*, 675 S.W.2d 53 (Mo.App.1984), the issue of permitting a jury to review written deposition testimony that had been read at trial in lieu of live testimony was discussed. The court point-

ed out that since the reading of the deposition took the place of live testimony, it was testimonial in nature. It admonished that, generally, exhibits that are testimonial in nature may not be given to the jury during their deliberations. *Id.* at 57. Trial courts are well served by the admonition in *Brooks*.

---

**3.** Laboratory tests indicated the victim Lancaster could not be eliminated as the source of the blood found on the shirt left on West's porch.