STATE of Missouri, Respondent,

v.

Mark A. SIMMONS, Appellant.

No. WD 40238.

Missouri Court of Appeals, Western District.

Oct. 4, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 1, 1988.

Application to Transfer Denied Dec. 13, 1988.

Robert G. Duncan, Kansas City, for appellant.

William L. Webster, Atty. Gen., William J. Swift, Asst. Atty. Gen., Jefferson City, for respondent.

Before COVINGTON, J., Presiding, and NUGENT and GAITAN, JJ.

PER CURIAM:

Defendant was charged with assault in the first degree, in violation of § 565.050, RSMo 1986. He was convicted after a jury trial and sentenced to a term of ten years' imprisonment. On appeal the defendant claims that the trial court erred in overruling his motion for a judgment of acquittal because there was insufficient evidence to support his conviction. The conviction is affirmed.

This case arises out of an altercation that occurred at a Clay County automotive salvage business known as "Porter's Garage."

The incident left the victim, 49–year-old James Walker, who was engaged in auto salvage work, severely disabled as a result of a head injury.

One of the owners of the garage, Richard Porter, was a witness to the incident and later testified at trial. Mr. Porter stated that on September 4, 1986, Mr. Walker towed a vehicle to the garage with the intent of selling it to Porter. When Mr. Walker arrived at the garage, Mr. Porter went outside, stood by the truck, and talked with Mr. Walker.

Mr. Porter testified that, while he and Walker conversed, Mark Simmons appeared and began to shout about "getting even" with Walker over something about which they had argued in the past. Simmons carried a stick. Taking a long swing with the stick, Simmons hit Walker on the left side of the head, just above the ear. After the blow was struck, while banging on the back of the truck with the stick, Simmons told Walker, "I coulda [sic] killed you if I wanted to."

Mr. Porter further stated that, after Simmons hit Walker, Simmons and Walker argued with each other, and Walker leaned forward into the truck and picked up a crowbar. Mr. Walker, however, could do nothing because he was so badly hurt, and Simmons threw down his club and left. At that point, Mr. Porter took hold of Walker, who was bleeding, and offered to take him to the hospital. Walker refused the help and drove away.

Raymond Allen was also at the scene. At trial, Allen stated that he was working inside the garage when he heard a great deal of noise. Allen looked up from his work and glanced at a full-length mirror which hung on one wall of the garage. In the mirror, Allen saw a man, whom he identified at trial as the defendant, banging on Walker's truck with a stick and yelling. In the mirror Allen also saw Walker holding a crowbar.

Mr. Walker's wife, Carolyn, testified at trial. Mrs. Walker stated that on the day of the incident she was in a liquor store when she received a message that her husband was trying to reach her. When she arrived home, she found her husband sitting at the dining room table with blood running down the left side of his head and onto his shirt. Mr. Walker told her that he had been hit in the head. Mrs. Walker called the police. After the police told her it would be two hours before they could respond to the call, Mrs. Walker drove her husband to the North Kansas City police station.

Mrs. Walker stated that her husband was ultimately taken to the North Kansas City Hospital where he underwent surgery for injuries to his brain. At some point after his surgery, Mr. Walker could remember what had happened to him, and he told his wife that he had been hit in the head by Mark Simmons with a piece of wood.

During the trial, Mrs. Walker identified defendant as the Mark Simmons who struck her husband, according to her husband's report to her of the assault. Mrs. Walker stated that she was familiar with the defendant because he and Walker had done salvage work together and because the defendant had been at the Walker home on at least one occasion.

Mrs. Walker also described prior disputes between the defendant and Walker. Approximately one year before the assault, an incident occurred in which Walker's daughter went to defendant's home and claimed that Walker was sexually molesting her. In anger, Walker went to defendant's house in order to take his daughter home. Bad feelings resulted between the two men as a result of this incident. Then, a week before the assault, the defendant encountered Mr. Walker and his family in a bar. The defendant, who was intoxicated, approached Walker to shake hands and was apparently rebuffed by Walker. Defendant became angry, and a bartender called the police, who arrested defendant on an outstanding warrant in another matter.

Mrs. Walker further testified that, after the assault, Walker's condition deteriorated over time, and he was eventually placed in a nursing home where he remained comatose at the time of trial. Two doctors testified regarding Mr. Walker's condition;

they stated that Walker was not expected to improve.

In his only point on appeal, the defendant claims that there was insufficient evidence to sustain his conviction as a result of Mr. Porter's inability at trial to point to the defendant as the man he saw strike Walker.

In considering the issue of the sufficiency of the evidence, this court considers the facts and all favorable inferences to be drawn therefrom in the light most favorable to the state and disregards all contrary evidence and inferences. *State v. Clark*, 652 S.W.2d 123, 124 (Mo. banc 1983).

■ During the testimony presented at trial by Mr. Porter, Mr. Porter was unable to identify the defendant in the courtroom. The defendant first argues that Mr. Porter's failure to identify the defendant in the courtroom was tantamount to a statement that Walker's assailant was someone other than the defendant; therefore, the defendant contends, the sole eyewitness to the actual assault testified that the defendant was not the "Mark Simmons" he saw strike Walker. Appellant's argument is based upon the following portion of the trial record:

Q. [prosecutor]: Now, do you know the defendant in this case, Mr. Mark Simmons?

A. [Mr. Porter]: Yes, sir.

Q. Okay, and the Mark Simmons that you know, is he in the courtroom today?

A. Well, I hadn't observed here—not to my knowledge.

Q. I'm going to direct your attention to the gentleman seated with his attorney—

[Defense counsel]: I object to that, your honor.

[The court]: Sustained.

Q. Do you know any other person by the name of Mark Simmons?

A. Not as I know of, no.

Q. And you do know Mark Simmons?

A. Yes, sir.

Contrary to defendant's assertion, no interpretation of Mr. Porter's failure to recognize the defendant in the courtroom amounts to affirmative testimony that it was not the defendant, but someone else with the same name, who attacked Mr. Walker.

The defendant also contends that there was no eyewitness testimony that the defendant hit Walker. Although the defendant has not so expressed the question, the issue he presents is the effect of the inability of an eyewitness to a crime to identify the defendant in court as the perpetrator of the offense.

■ The criminal agency of the accused must be proven. *State v. Murphy*, 415 S.W.2d 758, 760 (Mo.1967). The evidence must show that the defendant is the person who committed the crime. *State v. McIntosh*, 546 S.W.2d 756, 758 (Mo.App.1977).

■ An in-court identification, however, is not always required. In *State v. Lingar*, 726 S.W.2d 728, 732–733 (Mo. banc 1987), the Missouri Supreme Court held that the state need not provide an in-court identification of a defendant in order to provide sufficient evidence that the defendant was the perpetrator of a crime. In *Lingar*, no witness physically indicated the defendant's presence in the courtroom. There was, however, testimony by one witness that "Stanley Lingar" had provided the victim with a ride. Another witness testified that he knew "the defendant" and had written a check to "Stanley Lingar." *Id.* at 733. One of the co-participants in the crime referred to Lingar by name throughout the trial. *Id.*

The Supreme Court rejected Lingar's claim on the basis that Lingar was the sole defendant on trial and the jury could clearly infer that the "Stanley Lingar" referred to by the witnesses was the defendant present in court. The court noted that it could find no possible confusion as to the appellant's identity and that, as such, the appellant's contention was "bereft of substance." *Id.* (quoting *State v. Stout*, 604 S.W.2d 710, 713 (Mo.App.1980)).

**524**

*State v. Lingar* is not completely on point with the present case, for, in *Lingar*, the question of identification arose because no one asked a witness to make an in-court identification. Here, the witness was asked to make an identification but was unable to do so. In this regard, the present case is closer in its facts to a case decided by the Indiana Supreme Court, *Hovis v. State*, 455 N.E.2d 577 (Ind.1983), which dealt specifically with the effect of a witness's failure, when asked, to identify the defendant at trial.

In *Hovis*, which involved the murder of a taxicab driver, the state's key witness testified that, on the night of the incident, he was awakened by sounds of a commotion outside his home. He saw two men hunched over a third man, who was lying on the ground. He ran outside and, grabbing a stick from his porch, confronted the two men. One of the two men fled, but the other man briefly scuffled with the witness. At trial, the witness was asked if he could identify anyone in the courtroom as the second assailant, and the witness replied that he could not.

On appeal, the defendant in *Hovis* claimed that there was insufficient evidence to identify him as the perpetrator of the offense. In affirming the conviction, the Indiana Supreme Court held that the inability of an eyewitness to identify the defendant in court was not dispositive of the question of the sufficiency of the evidence that the defendant was the perpetrator of the crime. *Id.* at 579. Instead, it was for the jury to resolve conflicts in the testimony and to weigh the evidence. *Id.* According to the *Hovis* court, the key question was whether, from all the evidence, the jury could have drawn a reasonable inference that the defendant was the perpetrator of the crime. *Id.* In *Hovis*, there was additional circumstantial evidence that linked the defendant to the murder, and the conviction was upheld.

■ The reasoning of the *Hovis* court applies to the present case. From all the evidence, the jury could have drawn a reasonable inference that the defendant was the party who assaulted Walker in Porter's Garage. Porter, who was an eyewitness to the actual assault, repeatedly affirmed that Mark Simmons, whom Porter had known for five years, was the party who struck Walker. Additionally, Raymond Allen identified the defendant in court as the man he saw arguing with Walker and banging on Walker's truck with a stick. Further, Walker's wife testified without objection that she was told by her husband that Mark Simmons, whom she recognized and identified at trial, was the assailant. The defense raised no question of whether Mrs. Walker knew more than one individual named Mark Simmons.

■ The defendant asserts that the testimony of Carolyn Walker was inadmissible hearsay evidence. Defendant made no objection to Mrs. Walker's testimony until defendant argued his motion for judgment of acquittal at the close of the state's case; thus, her statements were legitimately part of the evidence from which the jury could have drawn a reasonable inference that the defendant was the perpetrator of the crime. *State v. Thomas*, 440 S.W.2d 467, 470 (Mo.1969).

Viewing the evidence as a whole, there was sufficient evidence to sustain the conviction of the defendant. The judgment of conviction is affirmed.