

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD76416 |
| | ) | |
| JESSE LYDELL HICKS, | ) | **FILED:** November 18, 2014 |
| Appellant. | ) | |

**Appeal from the Circuit Court of Ray County**
**The Honorable Kevin L. Walden, Judge**

**Before Division Four: Alok Ahuja, C.J., and James E. Welsh and Gary D. Witt, JJ.**

Jesse Hicks was charged as an aggravated driving while intoxicated ("DWI") offender with one count of felony DWI, and one count of misdemeanor failure to stop at a stop sign. Following a bench trial, the Circuit Court of Ray County found Hicks guilty and sentenced him to concurrent sentences of five years for driving while intoxicated, and five days for failure to stop at a stop sign. Hick appeals, alleging that the circuit court erred by reviewing a portion of the audio recording of the trial testimony prior to issuing its guilty verdict. We affirm.

## Factual Background

On December 9, 2011, Hicks was the driver and sole occupant of a Ford Escape. City of Richmond Police Officer Jared Sartin observed Hicks failing to stop at a stop sign. Officer Sartin activated his emergency lights and pulled Hicks' vehicle over. Upon approaching the vehicle, Officer Sartin noticed that Hicks was "mumbling," that his eyes were bloodshot and

watering, and that there was a strong odor of intoxicants coming from Hicks and the vehicle. Hicks denied that he had been drinking.

Officer Sartin ordered Hicks to exit his vehicle. As Hicks exited, he used his car to help him maintain balance, keeping his hand on the vehicle as he walked. Sartin asked Hicks to perform three field sobriety tests (the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg stand test). Officer Sartin testified that Hicks failed all three tests. At that point, Officer Sartin arrested Hicks for DWI.

After Officer Sartin read Hicks Missouri's implied-consent law, Hicks refused to submit to a chemical breath test. Officer Sartin then read Hicks the *Miranda*[1] warning, and Hicks agreed to answer the officer's questions. He denied that he had been drinking, and denied that he had even been driving the vehicle.

A bench trial was held on March 25, 2013. At the conclusion of the evidence, that court stated that it would take a recess to permit the court to "look at the law and apply the evidence before me to that law and come back with a verdict." Following a recess which apparently lasted approximately 45 minutes, proceedings resumed on the record. The court then stated that

> I have reviewed all the evidence. That included going back and re-listening to a couple of spots of the tape [recording of the trial testimony]. I had a little bit of difficulty just hearing. Not necessarily understanding what was being said, but the word of what – what did they say at that particular point? I just listened to a little bit of the testimony.

The court then discussed its assessment of the evidence that had been presented, and found Hicks guilty of both charges. The court later sentenced Hicks to five years' imprisonment on the DWI charge, and a concurrent sentence of five days in the county jail for the failure to stop charge.

Hicks appeals.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

**Discussion**

Hicks argues that the trial court erred in reviewing a portion of the audio recording of the trial testimony prior to pronouncing its judgment.

Hicks made no objection to the circuit court's review of portions of the audio recording of the trial testimony at any point during the trial court proceedings. While Hicks was not made aware that the trial court had reviewed the audio recording until after it had occurred, he made no objection at that point, and requested no clarification concerning the portions of the trial transcript the court had reviewed, or the effect of that testimony on the court's verdict. In addition, while a motion for new trial is generally not required in a bench-tried criminal case under Rule 29.11(e), Hicks did not request that the trial court grant him a new trial based on the error he now alleges. Instead, from all that appears, Hicks' appellate brief is the first place where he has contended that the trial court's review of the audio recording requires the reversal of his conviction, and a remand for a new trial.

Given that Hicks did not raise his current argument at any stage of the circuit court proceedings, his claim can only be reviewed in this Court for plain error. "Rule 30.20 allows an appellate court to conduct plain error review 'when the court finds that manifest injustice or miscarriage of justice has resulted' from the trial court error." *State v. Collins*, 328 S.W.3d 705, 707 (Mo. banc 2011). "To show plain error, the defendant must demonstrate more than mere prejudice; instead, Defendant must show manifest injustice affecting a substantial right." *State v. Hoy*, 219 S.W.3d 796, 810 (Mo. App. S.D. 2007) (citing *State v. Parker*, 856 S.W.2d 331, 332-33 (Mo. banc 1993)). "Plain errors are evident, obvious, and clear; [this Court] determine[s] whether such errors exist based on the facts and circumstances of each case." *State v. Irby*, 254 S.W.3d 181, 192 (Mo. App. E.D. 2008).

3

Whether or not Hicks had preserved his claim, the trial court committed no error. Although Hicks argues that Missouri caselaw holds that "the finder of fact may not review testimonial matters during its deliberations," all of the cases he cites for this proposition involve *jury* trials. This was a bench trial, however.

In a jury trial, the risk of allowing the jury to rehear or reread particular testimony is that such a review "tend[s] to unduly emphasize some of the testimony, thus raising the possibility the jury would give it undue weight." *State v. Reed*, 21 S.W.3d 44, 46 (Mo. App. S.D. 2000).

The concern that the fact-finder will give undue emphasis to particular testimony does not exist in a court-tried case. We presume that trial judges in bench-tried cases will not rely on inappropriate considerations in reaching their decisions. Thus, where inadmissible evidence is admitted in a bench-tried case, "we presume that the trial judge was not prejudiced by inadmissible evidence and was not influenced by it in reaching a judgment unless it is clear from the record that the trial judge considered and relied upon the inadmissible evidence." *State v. Crews*, 406 S.W.3d 91, 94-95 (Mo. App. W.D. 2013) (citations and internal quotation marks omitted).

The Southern District's decision in *State v. Elliott*, 271 S.W.3d 604 (Mo. App. S.D. 2007), presents a somewhat analogous situation. In *Elliott*, the defendant in a sexual assault case argued that the trial court had improperly admitted into evidence the victim's written statement, which – according to the defendant – "improperly bolstered and added undue weight to [the victim's in-court] testimony by effectively allowing her to testify twice." *Id.* at 606. The Court rejected this claim, based in part on the principle that, "[i]t is presumed in a bench trial that the trial judge was not confused or misled by any allegedly irrelevant or inadmissible evidence unless the record clearly demonstrates that the trial court considered and relied upon the

4

inadmissible evidence." *Id.* at 607. Similarly, in *Gray v. State*, 318 S.W.3d 278 (Mo. App. S.D. 2010), the Court rejected a defendant's claim that he was prejudiced by the joinder of three separate sexual offense prosecutions in a single bench-tried case. The defendant argued that the joinder of the three prosecutions unfairly prejudiced him because DNA evidence existed as to only two of the offenses, but "*might* have unduly influenced the factfinder in relation to" the third charge. *Id.* at 284. Once again, the Court emphasized that the case was tried to the court, and that it was presumed that the trial court was not influenced by inappropriate considerations. *Id.*

While there may be a danger that a lay jury will give undue weight to particular trial testimony if it is permitted to rehear it during deliberations, the same concerns do not apply when the case is tried to the court. In bench-tried cases, courts often take the matter under advisement at the conclusion of trial; the court then issues its decision at a later date. In these circumstances, courts commonly review recordings or transcripts of the evidence at trial in reaching their ultimate decision. We are aware of no authority which prevents this practice, and for the reasons discussed above, cases involving jury trials involve fundamentally different considerations and are not controlling in this context.[2]

In addition, the court's review of the audio recording was limited in this case. The court's recess to consider its decision was only approximately 45 minutes long, during which the court indicated that it had proceeded through the instructions which would have been applicable in a jury-tried case, and had "reviewed all the evidence." The court stated that it had only

---

[2]     The State cites to *People v. Behrmann*, 696 N.Y.S.2d 27 (N.Y. App. Div. 1999), which held that the procedures required in New York prior to rereading testimony to a criminal jury during its deliberations were inapplicable in a bench-tried case, "[i]n view of the significant differences between jury deliberations and a nonjury court's consideration of a case." *Id.* at 27. *Behrmann*'s analysis is consistent with our own.

reviewed "a couple of spots of the tape," "a little bit of the testimony," and solely for the purpose of ensuring that the court had not misheard testimony which the court "had a little bit of difficulty just hearing." We do not believe that a trial judge listening to "a couple of spots" of an audio recording, to catch words that he may have missed during the live testimony, presents any of the dangers associated with permitting a jury to review testimonial evidence during its deliberations.

Further, there is no basis to conclude that the claimed error caused a manifest injustice. Because Hicks raised no objection and requested no clarification when the trial court stated that it had reviewed portions of the audio recording, there is no way to know what limited testimony the court reviewed, and therefore no way to know whether, or how, the court's review of that testimony might have prejudiced Hicks. Hicks argues that the alleged error was a "structural error" and thus reversible *per se*. While there may be some errors that so undermine the confidence in a trial that they require reversal without a showing of prejudice, even if the error is unpreserved, this is not one of them. Even in cases involving *jury trials*, we have held that access to testimonial materials during the jury's deliberations does not necessarily amount to plain error. *See Davolt v. Highland*, 119 S.W.3d 118, 136 (Mo. App. W.D. 2003) ("[A]llowing a deliberating jury to view testimonial evidence is not automatically manifest injustice."); *State v. Reed*, 21 S.W.3d 44, 47 (Mo. App. S.D. 2000) (allowing jury to review transcript of preliminary hearing, which included testimony of deceased witness and court's on-the-record finding of probable cause, was not plain error).

## Conclusion

The circuit court's judgment is affirmed.

6

_____
Alok Ahuja, Chief Judge

All concur.