

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD87230** |
| | ) | |
| **v.** | ) | **OPINION FILED:** |
| | ) | |
| **RASHEDE HARRIGAN,** | ) | **SEPTEMBER 30, 2025** |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Clay County, Missouri**
The Honorable David P. Chamberlain, Judge

Before Division Three:  Mark D. Pfeiffer, Presiding Judge, Cynthia L. Martin, Judge and
Janet Sutton, Judge

Rashede Harrigan ("Harrigan") appeals from a judgment convicting him of one count of sodomy in the second degree.  On appeal, Harrigan argues that the trial court's written judgment contains a clerical error, which the State concedes.  Harrigan also contends that the trial court plainly erred in permitting the admission of a lay witness opinion that vouched for the victim's credibility.  We reverse the judgment to the extent it incorrectly reflects the disposition of one of the counts with which Harrigan was charged, and remand this matter with instructions to correct the clerical error in the written judgment by the entry of a *nunc pro tunc* order.  In all other respects, the judgment is affirmed.

## Factual and Procedural Background[1]

Although not blood-related siblings, Harrigan and A.P. ("Victim") had a brother-sister relationship. In December 2021, when Harrigan was twenty years old and Victim was fourteen years old, Harrigan lived in Victim's family home. He invited Victim to watch a movie in his bedroom. As they laid in bed together, Harrigan attempted to "put his hands down [Victim's] pants" and "finger [her]." When Victim pulled away, Harrigan "grabbed [Victim's] hair and . . . pushed it down towards his penis." Harrigan's penis went into Victim's mouth, causing her to gag. Victim left the room, threw up, and went to her bedroom.

Victim did not tell her family what had happened because she was "embarrassed" that "it even happened." Harrigan moved out of the family's home shortly afterward.

In February 2022, Harrigan went to Victim's home to do laundry. When Victim saw Harrigan, she went to her room to go to bed. Later that night, Harrigan went into Victim's room to use her bathroom. While she was still asleep, Harrigan got into Victim's bed, pulled down her shorts, and forced his penis into her anus. Victim awoke when she felt her shorts being pulled down and "froze." Harrigan eventually got up to use the bathroom and left the room.

For two days, Victim did not disclose what had occurred with anyone. But she began arguing with her parents because they noticed changes in her behavior since the

---

[1]"In criminal cases, we view the evidence in the light most favorable to the verdict." *State v. Devalkenaere*, 684 S.W.3d 1, 6 (Mo. App. W.D. 2023) (citing *State v. Hendricks*, 619 S.W.3d 171, 173 n.1 (Mo. App. W.D. 2021)).

events with Harrigan.  The morning after one of these arguments, Victim woke her father up and told him that something had happened with Harrigan.  Instead of calling the police, Victim's father called a family meeting with Victim's siblings to better understand what had happened between Harrigan and Victim.  After Victim described the incidents, her siblings presumed that Victim had "probably wanted it to happen."

Two days later, Victim's father invited Harrigan over to hear his side of the story.  When Victim saw Harrigan, she went to the bathroom, cried, and got into an argument with her father about why he had asked Harrigan to come to their house.  Afterward, Victim felt her father "finally understood" and "believed [her]."

The next day, Victim told her teacher about what happened with Harrigan, and her teacher urged her to tell her mother.  The following day, Victim's mother noticed Victim was barely eating and asked her what was wrong.  Victim related her encounters with Harrigan, and her mother called the police immediately.

The police came to Victim's home and sent her to get a forensic interview and physical examination, which revealed an abnormal finding of "penetrating genital trauma" in Victim's hymen.  After the forensic interview and examination, Victim went to the emergency room due to ongoing rectal bleeding from the sexual contact with Harrigan.

Harrigan was charged with one count of second-degree sodomy pursuant to section 566.061[2] ("Count I") and one count of fourth-degree molestation of a child under seventeen years old pursuant to section 566.071 ("Count II").

Harrigan waived his right to a jury trial. During the bench trial, the State called the detective who investigated Victim's allegations ("Detective").[3] On direct examination, Detective testified that police protocol required her not to speak with Victim directly and, instead, to refer Victim for a recorded forensic interview. Detective explained this procedure is intended to limit the number of times a minor alleging sexual abuse needs to be interviewed. Detective testified that she based her investigation on the recording of Victim's forensic interview.

On cross examination, defense counsel asked Detective, "Okay, so, you didn't attempt to find any other possible explanations for the allegations? You just took the complaining witness at her word?" Detective responded, "Yes."

On redirect examination, the State asked Detective:

[The State]: In your experience as an investigator, when a victim states that they were sexually assaulted, do you find that there are other explanations?

[Detective]: Not usually - -

[Defense Counsel]: Objection, relevance.

[Trial Court]: Overruled.

---

[2]All statutory references are to RSMo 2016 as supplemented to the date of Harrigan's charged offenses, unless otherwise indicated.

[3]All witnesses and others who are not parties are referred to by their initials or by other non-identifying references in accordance with the redaction requirements of section 509.520 and Supreme Court Operating Rule 2.02(c) to not provide the names of any non-party witnesses.

4

[The State]: Do you find that there are other explanations?

[Detective]: No.

[The State]: As an investigator, do you take it upon yourself to find reasons outside of what a victim has stated for sexual assault?

[Detective]: No.

At the close of the State's evidence, Harrigan's counsel moved for acquittal. The trial court denied the motion as to Count I, second-degree sodomy, and granted the motion as to Count II, fourth-degree child molestation. The trial court found Harrigan guilty of Count I and sentenced him on May 7, 2024, to seven years' incarceration in the Missouri Department of Corrections. The trial court entered a written judgment of conviction and sentence on May 7, 2024, ("Judgment") that correctly reflected the disposition of Count I, but incorrectly reflected that Count II had been dismissed by the prosecutor *nolle prosequi*.

Harrigan timely appealed.

**Standard of Review**

Our standard of review following a bench trial in a criminal case is the same as in a jury-tried case. *State v. Brown*, 360 S.W.3d 919, 922 (Mo. App. W.D. 2012). We "view the evidence in the light most favorable to the judgment, disregarding any contrary evidence and granting the State all reasonable inferences from the evidence." *State v. Johnson*, 244 S.W.3d 144, 152 (Mo. banc 2008).

Where a criminal defendant challenges the admission of evidence, we review for abuse of discretion. *State v. Scott*, 676 S.W.3d 336, 340 (Mo. App. E.D. 2023). "An

5

abuse of discretion is found when the decision to admit or exclude the challenged evidence is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id.* at 340-41 (quoting *State v. Barriner*, 210 S.W.3d 285, 296 (Mo. App. W.D. 2006)). "If we find that the trial court abused its discretion, we reverse only if the prejudice resulting from the improper admission is outcome-determinative." *Id.* (citing *State v. McGee*, 284 S.W.3d 690, 701 (Mo. App. E.D. 2009)).

**Analysis**

Harrigan raises two points on appeal. Harrigan's first point contends that the trial court's written judgment includes a clerical error relating to the disposition of Count II ("Point One"). Harrigan's second point argues that the trial court committed plain error in permitting lay witness testimony that vouched for Victim's credibility ("Point Two"). We address the points in reverse order.

***Point Two: Improper Lay Witness Opinion Testimony about Victim's Credibility***

Harrigan asserts that the trial court plainly erred by permitting the State to admit Detective's lay witness testimony that vouched for Victim's credibility, resulting in manifest injustice requiring a new trial. Harrigan specifically contends that Detective was permitted to provide an improper lay witness[4] opinion that Victim was telling the truth when Detective testified that she did not investigate any other explanation for

---

[4]Harrigan characterizes Detective as a lay witness, and the State does not challenge this characterization. We assume, therefore, that Detective was testifying as a lay witness.

Victim's report of sexual abuse. While defense counsel objected to the admission of this testimony at trial on the basis of relevance, Harrigan's motion for new trial failed to claim error relating to the admitted testimony. Although a motion for new trial may, but need not, be filed in cases tried without a jury in order to preserve a matter for appellate review, "[i]f a motion for new trial is filed, allegations of error to be preserved for appellate review must be included" in the motion. Rule 29.11(e)(1), (2).[5] Harrigan concedes that his second point on appeal has not been preserved for appellate review, and requests plain error review pursuant to Rule 30.20.[6]

When alleged error is not preserved by raising the issue in a motion for new trial, we have discretion to review for plain error under Rule 30.20. *State v. Mefford*, 713 S.W.3d 524, 530 (Mo. App. W.D. 2025). In relevant part, Rule 30.20 provides that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." "The plain error rule is to be used sparingly and may not be used to justify a

---

[5]All Rule references are to *Missouri Court Rules, Volume I - State, 2025*, unless otherwise noted.

[6]Even had Harrigan raised his claim of error involving Detective's testimony in his motion for new trial, we would question its preservation for appellate review. On appeal, Harrigan claims error in the admission of an improper opinion from a lay witness. At trial, Harrigan objected to the admission of Detective's testimony on the basis of relevance. These are materially different objections. To preserve a claim of error in the admission of evidence at trial, "the point raised on appeal must be based upon the same theory presented at trial." *State v. Hunter*, 626 S.W.3d 867, 880 (Mo. App. E.D. 2021) (quotation omitted). "[T]he objecting party must make the reason for his objection reasonably apparent to the court to provide the objecting party's opponent an opportunity to correct any errors and to allow the court to correctly rule on the issue." *Id*. (citation omitted).

7

review of every point that has not been otherwise preserved for appellate review." *State v. Warren*, 702 S.W.3d 48, 60 (Mo. App. W.D. 2024) (quoting *State v. Garoutte*, 694 S.W.3d 624, 627 (Mo. App. W.D. 2024)).

"Plain error review is a discretionary two-step process." *State v. Vitale*, 688 S.W.3d 740, 746 (Mo. App. E.D. 2024) (citations omitted). "Under step one, there must be a 'determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted,'" because the error is "evident, obvious, and clear." *Id.* (quoting *State v. Shepard*, 662 S.W.3d 761, 772 (Mo. App. E.D. 2023)). "Only if plain error is found under step one may we proceed to the second step to determine whether the claimed error resulted in manifest injustice or a miscarriage of justice." *Id.* (citing *Shepard*, 662 S.W.3d at 772). "To show manifest injustice or a miscarriage of justice, a defendant must demonstrate 'outcome-determinative error.'" *Id.* (quoting *State v. Martin*, 661 S.W.3d 337, 340 (Mo. App. S.D. 2023)).

Harrigan has not shown error that is evident, obvious, or clear because he has not facially established substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. Generally, a lay witness "who personally observed events may testify to h[er] matter of fact comprehension of what [s]he has seen in a descriptive manner which is actually a conclusion, opinion or inference, if the inference is common and accords with the ordinary experiences of everyday life." *State v. Brown*, 717 S.W.3d 589, 598-99 (Mo. App. S.D. 2025) (quoting *State v. Sander*, 682 S.W.3d 85, 96-97 (Mo. App. W.D. 2023)). However, a lay witness cannot give an opinion regarding

8

the ultimate issue that the fact-finder has to determine. *State v. Schelsky*, 597 S.W.3d 201, 210 (Mo. App. E.D. 2019). Although Victim's credibility was an ultimate issue to be determined by the trial court as the fact-finder, Detective's testimony was not offered as an opinion at all, let alone as an opinion on Victim's credibility.

Redirect examination allows "a witness the opportunity to explain or avoid the consequences of [a] new matter brought on h[er] cross-examination, and to rebut the discrediting effect of damaging statements or admissions elicited from h[er]." *Brock v. Shaikh*, 689 S.W.3d 792, 796 (Mo. App. E.D. 2024) (quoting *Moon v. Hy-Vee, Inc.*, 351 S.W.3d 279, 284-85 (Mo. App. W.D. 2011)) (internal quotations omitted). On cross-examination, defense counsel elicited testimony that Detective "took [Victim] at her word" without pursuing alternative explanations for what may have happened. The plain implication of this line of questioning was to discredit the sufficiency of Detective's investigation.

On redirect examination, the State's inquiry afforded Detective the opportunity to explain why she did not pursue another explanation for Victim's claims. Detective testified that she never directly interviewed Victim, and that her investigative findings were drawn exclusively from the recording of Victim's forensic interview. Detective also testified that she did not generally "take it upon [herself] to find reasons outside of what a victim has stated for sexual assault." Detective's testimony neither implicitly or explicitly expressed an opinion about Victim's credibility, and instead rebutted the "discrediting effect" of cross-examination testimony that suggested she had not fully investigated the case. *Brock*, 689 S.W.3d at 796. Detective's testimony thus fell within

9

the permissible parameters of lay witness testimony. *See Brown*, 717 S.W.3d at 598-99. Because a witness can explain issues raised in cross-examination, the trial court did not commit evident, obvious, or clear error in permitting Detective's testimony. *See Brock*, 689 S.W.3d at 796.

To support his claim that Detective's testimony constituted an improper lay witness opinion that vouched for Victim's credibility, Harrigan relies on *State v. Ferguson*, 568 S.W.3d 533 (Mo. App. E.D. 2019). There, the trial court was found to have abused its discretion in permitting a school counselor to provide an expert opinion that she had "[n]o doubt at all" that the child victim was telling the truth about experiencing sexual abuse. *Id.* at 540-41. Detective's testimony bears no relationship to the expression of a particularized opinion by an expert witness about a victim's credibility that was at issue in *Ferguson*. *Id.* at 540. At best for Harrigan, even if Detective's testimony is viewed as the expression of an opinion, (which we do not find), the testimony would fall into the category of admissible generalized testimony regarding general behaviors and characteristics found in child sex abuse victims. *See State v. D.W.N.*, 290 S.W.3d 814, 817 (Mo. App. W.D. 2009) (addressing the difference between inadmissible particularized opinion testimony about a specific victim's credibility, and admissible generalized opinion testimony about general behavior of child sex abuse victims). In any event, *Ferguson* is further inapposite as the case was tried to a jury. 568 S.W.3d at 538. The "concern that the fact-finder will give undue emphasis to particular testimony does not exist in a court-tried case." *State v. Albin*, 696 S.W.3d 514, 519 (Mo. App. W.D. 2024) (quoting *State v. Hicks*, 448 S.W.3d 848, 850 (Mo. App. W.D. 2014)).

10

In a bench trial, we presume the trial judge did not rely on allegedly inadmissible evidence unless the record clearly demonstrates otherwise. *Id.*

We recognize that *Ferguson* involved the admissibility of expert witness testimony, and not lay witness testimony, and that the core premise of Harrigan's claim of error on appeal is that Detective could not provide opinion testimony at all, whether particularized or general, because she was a lay witness. Regardless of the characterization of Detective's status as an expert or lay witness, however, Harrigan cannot overcome the hurdle that Detective's allegedly objectionable testimony was not opinion testimony. That conclusion is underscored by *State v. Edwards*, 365 S.W.3d 240 (Mo. App. W.D. 2012), another case relied on by Harrigan.

Under plain error review, *Edwards* held that the trial court did not err in permitting a children's services investigator to testify that she directed a child victim further into the investigatory process because she believed the child's allegations of sexual abuse. *Id.* at 252, 254. The court found the investigator's testimony that "she 'believed' [the child] was not so much an opinion regarding [the child's] credibility, as it was an explanation for her decision to terminate the interview." *Id.* at 253. Similarly, Detective's testimony explained the extent of her investigation and was not an opinion regarding Victim's credibility.

The trial court did not commit error, plain or otherwise, in permitting Detective's testimony.

Point Two is denied.

***Point One: Clerical Error in the Written Judgment***

11

Point One challenges the court's written Judgment as incorrectly indicating that Count II, which charged Harrigan with one count of fourth-degree molestation of a child under seventeen years old pursuant to section 566.071, was dismissed by the prosecutor rather than disposed by acquittal. Harrigan requests that we remand the matter to the trial court with instructions to enter a *nunc pro tunc* judgment to correctly reflect that he was acquitted on Count II. The State agrees.

Rule 29.12(c) narrowly authorizes the *nunc pro tunc* correction of a judgment. *State v. Boedecker*, 717 S.W.3d 225, 233 n.5 (Mo. App. W.D. 2025) (citing *State v. Campbell*, 598 S.W.3d 151, 153-54 (Mo. App. S.D. 2020)). Rule 29.12(c) provides that "[c]lerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time after such notice, if any, as the court orders." Such a correction relates back to the date of entry of the original judgment. *Boedecker*, 717 S.W.3d at 233 n.5.

In a criminal case, "[t]he failure to accurately memorialize the decision of the trial court as it was announced in open court is a clerical mistake." *State v. Robinson*, 685 S.W.3d 32, 34 (Mo. App. W.D. 2024) (citing *State v. Davie*, 638 S.W.3d 514, 524 (Mo. App. W.D. 2021)). Here, the trial court's written Judgment states that Count II was "Dismissed by Prosec/Nolle Pros," contradicting the trial court's oral pronouncement that Harrigan was acquitted of the offense. Therefore, the written Judgment contains a clerical error that should be corrected by the entry of a *nunc pro tunc* order. *See id.* ("Clerical errors in the . . . judgment in a criminal case may be corrected by order *nunc pro tunc* if the written judgment does not reflect what was actually done.")

12

Point One is granted.

## Conclusion

The trial court's Judgment is reversed to the extent it reflects the incorrect disposition of Count II. This case is remanded with directions to the trial court to enter a *nunc pro tunc* order to correct the written Judgment to reflect that Harrigan was acquitted on Count II. In all other respects, the trial court's Judgment is affirmed.


_____
Cynthia L. Martin, Judge

All concur

13